# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-0846
Lower Tribunal No. 19-CF-018602

_____

BACILIO ANTEMATE XOLO,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
Margaret O. Steinbeck, Judge.

July 26, 2024

HOOI, M.J., Associate Judge.

This criminal appeal shows the tension between section 90.104(1), Florida Statutes, and precedent from the Florida Supreme Court interpreting it.[1] Under the statute, Bacilio Antemate Xolo seemingly preserved for appeal a challenge to the admission of his confession at trial. But under the precedent, he did not.

---

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

## I.

Sometime before dinner one evening in November 2019, Xolo and his domestic partner, "E,"[2] began arguing in the apartment they shared with four children. Their argument escalated, resulting in charges against Xolo for attempted second-degree murder and four counts of child abuse. §§ 782.04(2), 777.04, 775.087, 827.03, Fla. Stat. (2022). E was shot in the face that evening in the children's presence by a .38 revolver that Xolo had with him. All six of them ran outside after the shooting, and Xolo threw the gun into the lake behind their apartment.

When sheriff's deputies arrived at the scene, E could not talk. Blood was gushing from her face. Others there were screaming that Xolo "did it."

Though not a native English speaker, Xolo wanted to talk. When he saw the patrol cars after the shooting, he approached, saying, "Officer, excuse me, I need help, we had an accident." Xolo was later arrested and taken to an interview room. Before questioning, one of the deputies translated the *Miranda*[3] warnings from an agency-issued card into Spanish for Xolo, who seemed to understand his rights. He proceeded to make a recorded statement, confessing that the shooting was accidental and that if it were intentional, he would have killed her.

---

[2] We have used initials for the victim's and the children's names to protect their identities.

[3] *Miranda v. Arizona*, 384 U.S. 436, 444–45, 479 (1966).

Recorded statements were also taken from the three eldest children—"Je," "Ja," and "U"—then ages 12, 11, and 8, respectively. They are E's children from a prior relationship. The youngest sibling, "G," a biological child of Xolo and E, was not interviewed. Although Je, Ja, and U were separately interviewed at different times, all three pointed to Xolo as the shooter and tied him to the gun he threw into the lake.

## II.

The case went to trial in 2022. Before trial, Xolo moved to suppress his confession, and the State filed notices that it intended to use Je's, Ja's, and U's child-hearsay statements. The trial court held pretrial hearings on these issues.

The court denied Xolo's motion to suppress. Xolo testified at the suppression hearing and argued through counsel that his recorded confession was coerced. He alleged that the deputies slammed him on the ground and forced him to confess before reading the *Miranda* warnings, that they made false promises to induce him to confess, and that he could not understand the Spanish translator used when he supposedly confessed.

In denying the motion, the court found that Xolo's testimony was not credible and that despite some inconsistencies, the deputies' testimony was credible. The court did not believe, as Xolo testified, that the deputies slammed him or made any promises. Nor did it find that he failed to understand his rights before confessing.

3

Xolo's confession was thus admissible. When the State later moved at trial to admit that recorded statement, his defense counsel said, "no objection."

The court also ruled that the child-hearsay statements were admissible under section 90.803(23), Florida Statutes (2022). It found sufficient indicia of reliability but ruled that some parts would have to be redacted, that the children would have to testify at trial before the redacted statements could be admitted, and that Xolo could raise other objections to their admissibility. After that pretrial ruling, Xolo did not present any evidence or argument against admitting the children's redacted statements under section 90.803(23). They were admitted at trial without objection.

Although Xolo reiterated when he testified at trial that the shooting was an accident, the other family members' testimony suggested otherwise. The family's apartment had an open floor plan. A person in the living room could have seen who was in the dining room and the kitchen. E told the jury that as she and Xolo were arguing, he said that he had a gun and would kill her. He pressed the gun against her left cheek and shot her. Je and U testified that they and their siblings were in the living room when Xolo shot their mother in the dining room. While both Je and U saw Xolo shoot E, Ja heard only the loud bang. Even so, Ja testified that she was in the living room with her siblings, saw Xolo shove E in the dining room as they argued, and had seen Xolo's gun before.

4

Xolo tried to distance himself from the gun and the shooting through his trial testimony. He told the jury, "I've never had weapons on my hands, never." He also said that "I don't remember what happened, honestly." He even suggested that E may have been the one to shoot the gun.

The jury found Xolo guilty as charged. It specially found that in attempting second-degree murder, Xolo carried, displayed, used, threatened to use, or attempted to use a firearm, that he possessed a firearm, that he discharged a firearm, and that the discharge inflicted great bodily harm on E. The trial court adjudged him guilty and sentenced him concurrently to life in prison for the attempted murder and five years for each child-abuse conviction. Xolo timely appealed.

### III.

We affirm the judgment and sentence. Fla. R. App. P. 9.030(b)(1)(A), 9.140(b)(1)(A), (F). We have considered each issue that Xolo has raised on appeal and concluded that only one—whether the trial court erroneously denied the motion to suppress his confession—should be discussed further. The State argues in this appeal that Xolo failed to preserve that issue. A Florida statute suggests that the issue may have been preserved. A Florida Supreme Court precedent holds otherwise.

Xolo replies to the State's argument that he failed to preserve his challenge to his confession's admission by citing section 90.104(1), Florida Statutes (2022). The statute says that when a "court has made a definitive ruling on the record admitting

5

or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." § 90.104(1), Fla. Stat. (2022). Since the court denied the motion to suppress Xolo's confession, the argument goes, it definitively ruled that the confession was admissible, and Xolo did not have to renew his objection at trial. So even though his defense counsel did not object when the State offered the confession at trial, Xolo says, he can still challenge its admission.

Not so. The Florida Supreme Court held otherwise in *Carr v. State*. 156 So. 3d 1052 (Fla. 2015) (per curiam), *abrogation recognized on other grounds by Cruz v. State*, 372 So. 3d 1237 (Fla. 2023) (per curiam). *Carr* involved a love triangle between the victim, her estranged husband, and the defendant. *Id.* at 1057. It ended when the husband and the defendant carried out their plan to murder the victim. *Id.* Sometime after the murder, the husband listed the defendant on a school record as an emergency contact for one of his and the victim's children. *Id.* at 1062. The trial court ruled over the defendant's objection at a pretrial hearing that the school record was admissible. *Id.* When the school record was later offered as evidence against the defendant during the trial's guilt phase, her counsel said, "no objection." *Id.* (cleaned up). By doing so, the Florida Supreme Court explained as it upheld the murder conviction and death sentence, the defense "abandoned her pretrial objections to the record's admissibility" and "did not preserve" them for appellate review. *Id.*

6

Because we are bound by *Carr*, we must conclude that Xolo did not preserve his challenge to his confession's admission. Like the defendant in *Carr*, Xolo stated through counsel that he had no objection when the State offered the evidence at trial. He thus abandoned his pretrial objections.

To be sure, someone in Emilia Carr's or Bacilio Xolo's position faces a conundrum. Even after definitively ruling on admissibility, a court may still ask whether a party objects when the evidence is later offered at trial. When a party has nothing new to add after a definitive ruling that the evidence is admissible, what should the response be when the court again asks whether there is any objection?

A party either objects or does not. If the response is yes, then the party has necessarily renewed the objection. But that is what section 90.104(1) states is unnecessary to preserve the claim of error. If the response is no, then under *Carr* the objection is abandoned and not preserved even though—once again—the statute explicitly says that "a party need not renew an objection to preserve a claim of error for appeal." *Compare Carr*, 156 So. 3d at 1062 *with* § 90.104(1), Fla. Stat. (cleaned up).

Qualifying the response with "pursuant to my prior objection" or "subject to my prior objection" does not resolve this conundrum. Consider what these examples, which were discussed at the oral argument in this appeal, are really saying. To refer to a prior objection, as both examples do, is to renew it. Even with a qualifier, the

7

party would still be renewing the objection—exactly what the statute says is unnecessary.

So long as *Carr* is good law, a party that has already received a definitive ruling on admissibility may have to renew the objection to admitting the evidence at every turn to preserve a claim of error for appeal despite section 90.104(1). We recognize that parties and their counsel throughout our state may similarly face the conundrum when they are asked more than once in a case for their position on whether a specific item of evidence should be admitted. The most we can do here is flag the tension between the statute and the precedent for another look by the Florida Supreme Court in an appropriate case.

AFFIRMED.

NARDELLA and MIZE, JJ., concur.

Howard L. "Rex" Dimmig, II, Public Defender, and Benedict P. Kuehne, Michael T. Davis, and Susan Dmitrovsky, Special Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and William C. Shelhart, Assistant Attorney General, Tampa, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED